UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMES KLECKNER, individually and on behalf of all others similarly situated, | DOCKET NO. 4:20-cv-01344 |
| vs. | JURY TRIAL DEMANDED |
| ENBRIDGE (U.S.), INC. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

**ORIGINAL COMPLAINT**

1. Plaintiff James Kleckner brings this lawsuit to recover unpaid overtime wages and other damages from Enbridge (U.S.) Inc. (Enbridge) under the Fair Labor Standards Act (FLSA).

2. Enbridge is an energy transportation company that employs personnel, including Right of Way Agents or landmen, to carry out its work

3. Kleckner and the other workers like him regularly worked for Enbridge in excess of forty (40) hours each week.

4. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, Enbridge paid Kleckner and those similarly situated workers a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

**JURISDICTION AND VENUE**

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this Action involves a federal question under the FLSA.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Enbridge's principal office is in this District and Division.

9. Enbridge maintains a corporate headquarters in Houston, Texas.

## THE PARTIES

10. Kleckner worked for Enbridge from 2013 until December 2019 as a Right of Way Agent.

11. Throughout his employment with Enbridge, Kleckner was paid a day-rate with no overtime compensation.

12. Kleckner's consent to be a party plaintiff is attached as Exhibit A.

13. Kleckner brings this action on behalf of himself and all other similarly situated workers who were paid by Enbridge's day-rate system. Enbridge paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

14. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Right of Way Agents[1] employed by, or working on behalf of, Enbridge (U.S.) Inc., who were paid a day rate with no overtime at any time during the last 3 years** (Putative Class Members).

15. Defendant Enbridge (U.S.) Inc. is a corporation with its principal corporate office in Houston, Texas. Enbridge (U.S.) Inc. does business throughout the United States. Enbridge may be served through its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201 or wherever they may be found.

---

[1] Plaintiff uses the term "Right of Way Agent" throughout as the general industry term. This is meant to include this job position regardless of specific name used, including "Land Agent" or "Landman."

**COVERAGE UNDER THE FLSA**

16. At all times hereinafter mentioned, Enbridge has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17. At all times hereinafter mentioned, Enbridge has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

18. At all times hereinafter mentioned, Enbridge has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce—such as equipment, hand tools, computers, automobiles, and cell phones—by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

19. At all times hereinafter mentioned, Kleckner and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

20. As will be shown through this litigation, Enbridge treated Kleckner the Putative Class Members as employees and uniformly dictated the pay practices Kleckner and its other employees were subjected to.

**FACTS**

21. Enbridge claims to be the "leading energy delivery company in North America."[2] To complete their business objectives, Enbridge hires personnel (like Kleckner) to perform Right of Way

---

[2] https://www.enbridge.com/about-us (last visited April 13, 2020).

3

and Land Title work for Enbridge's network of liquid and natural gas pipelines throughout the country.

22. Many of these individuals worked for Enbridge on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

23. Enbridge paid the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

24. For example, Kleckner worked for Enbridge from 2013 until December 2019 throughout Texas, Louisiana, Oklahoma, and Colorado. Throughout his employment with Enbridge, he was paid on a day-rate basis.

25. As a Right of Way Agent, Kleckner's primary job duties included researching land ownership, researching and drafting easements, and interacting with landowners to execute contracts for land acquisition and easements.

26. Kleckner normally worked 10 to 12 hours a day and 6 to 7 days a week.

27. Kleckner was never guaranteed a salary when he worked for Enbridge.

28. Kleckner was required to report the days worked to Enbridge, not the hours he worked.

29. The work Kleckner performed was an essential and integral part of Enbridge's core business.

30. To the extent these Right of Way Agents make "decisions," the decisions do not require the exercise of independent discretion and judgment.

31. Right of Way Agents are not permitted to deviate from established standards.

32. Instead, Enbridge's Right of Way Agents apply well-established techniques and procedures. The reports submitted by Kleckner to his supervisors is generated and required by Enbridge. The assignments and schedules for Kleckner and the other Right of Way Agents are created and assigned by Enbridge. The timesheets that Kleckner and the Right of Way Agents submit to be paid are approved and audited by Enbridge.

33. Enbridge controlled all the significant or meaningful aspects of the job duties performed by Kleckner.

34. Even though Kleckner often worked away from Enbridge's offices, Enbridge still controlled all aspects of Kleckner's job activities by enforcing mandatory compliance with Enbridge's policies and procedures.

35. Enbridge directly determined Kleckner's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working for Enbridge.

36. Very little skill, training, or initiative was required of Kleckner to perform his job duties.

37. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Enbridge or its clients. Virtually every job function was pre-determined by Enbridge, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

38. Kleckner and the Putative Class Members did not have any supervisory or management duties.

39. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

40. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

41. Enbridge's policy of failing to pay its employees, including Kleckner, overtime violates the FLSA because these workers are performing non-exempt job duties.

42. It is undisputed that Kleckner and the Putative Class Members are performing manual labor and working long hours out in the field.

43. Enbridge's day-rate system violates the FLSA because Kleckner and those similarly situated workers did not receive any overtime pay for hours worked over 40 hours each week.

## FLSA VIOLATIONS

44. As set forth herein, Enbridge has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an Enbridge engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

45. Enbridge knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Enbridge's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

46. Accordingly, Kleckner and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

47. Kleckner incorporates all previous paragraphs and alleges that the illegal pay practices Enbridge imposed on Kleckner were likewise imposed on the Putative Class Members.

6

48. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

49. Numerous other individuals who worked with Kleckner indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

50. Based on his experiences and tenure with Enbridge, Kleckner is aware that Enbridge's illegal practices were imposed on the Putative Class Members.

51. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

52. Enbridge's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

53. Kleckner's experiences are therefore typical of the experiences of the Putative Class Members.

54. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

55. Kleckner has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Kleckner has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

56. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

57. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Enbridge will reap the unjust benefits of violating the FLSA and applicable state labor laws.

58. Furthermore, even if some of the Putative Class Members could afford individual litigation against Enbridge, it would be unduly burdensome to the judicial system.

59. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

60. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Enbridge employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA;

   b. Whether Enbridge's day rate pay practice meets the salary-basis test;

   c. Whether Enbridge's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   d. Whether Enbridge's violation of the FLSA was willful; and

   e. Whether Enbridge's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

61. Kleckner's claims are typical of the claims of the Putative Class Members. Kleckner and the Putative Class Members sustained damages arising out of Enbridge's illegal and uniform employment policy.

62. Kleckner knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

63. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

64. Kleckner demands a trial by jury.

## RELIEF SOUGHT

65. WHEREFORE, Kleckner prays for judgment against Enbridge as follows:

   a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order appointing Kleckner and his counsel to represent the interests of the FLSA Class;

   c. For an Order finding Enbridge liable to Kleckner and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

   e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_
    Michael A. Josephson
    Texas Bar No. 24014780
    Federal ID No. 27157
    Andrew W. Dunlap
    Texas Bar No. 24078444
    Federal ID No. 1093163
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    AND

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    Federal ID No. 21615
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**